[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON APPLICATION FOR A TEMPORARY INJUNCTION
The plaintiff James Macek seeks a Temporary injunction restraining the defendant J.G.V.S. Inc. from cancelling or terminating the Franchise Agreement and restraining the defendant from violating any of the provisions of Sec. 42-133 8 (termination or cancellation of, or failure to renew a franchise) as it pertains to the plaintiff.
The following facts are found from the evidence put forth by the parties at the show cause hearing. JGVS, as franchiser and CT Page 1873 Macek, as franchisee, entered into a franchise agreement in 1989. Under this agreement Macek was authorized to operate a "Fancy Bagel" bagel restaurant in Farmington. The agreement was for a five year term. In June 1995, the 1989 agreement was renewed by a similar franchise agreement, also having a five year term. Both agreements contained the following language in Article XII, § H:
 Franchisee further agrees to purchase all bagels exclusively from Franchiser. Franchiser agrees to supply only kosher bagels. If Franchiser is unable to supply said bagels, Franchisee shall have the right to purchase bagels from another source.
In 1992 JCVS was purchased by its present owner, Guiseppe Belaro.
Under the terms of the franchise JGVS supplied Macek with raw bagel dough made in the JGVS factory and delivered to Macek's restaurant. Macek made from this raw dough the finished bagel for sale in his restaurant.
When Macek began operating under his franchise he sold his bagels as Kosher bagels even though his restaurant was not certified to sell Kosher bagels. Sometime in 1991 Macek learned he needed to be certified and called in a Rabbi who advised Macek what changes would have to be made in his restaurant in order to be certified. Macek, who at the time was located in premises adjacent to the JCVS factory in Farmington, got the agreement of JCVS to do what had to be done to get the factory certified as well, since both had to be certified in order to be able to market the finished product as a Kosher bagel. Shortly, thereafter, the JGVS factory moved to New Britain. At some point in 1992 Macek learned he was no longer getting Kosher raw dough from JGVS and discontinued offering Kosher bagels. Macek did not pursue the matter with JGVS, did not inquire of them why he was no longer being provided Kosher dough. Nor did Macek in 1992 approach the new owner about the Kosher bagel provisions in the Agreement. In fact, Balero's son Salvatore approached Macek in the summer of 1998 and asked Macek about removing the language about Kosher bagels from the franchise agreement which had been renewed in 1995. As owners since 1992 the Belaros had never provided Kosher dough to Macek and had not been asked to by Macek. Macek refused and said he wanted to keep it in, even then not saying that he expected JCVS to begin providing him with Kosher bagel dough. CT Page 1874
In 1990 Macek opened a bagel restaurant in Meriden which was not affiliated with the "Fancy Bagel" franchise system. In that restaurant, Macek not only baked bagels, but also made his own bagel dough. Macek closed the Meriden restaurant in 1998 and moved the bagel dough making equipment to his Fancy Bagel restaurant in Farmington. In November 1998 Macek's weekly purchase of bagel dough from JGVS dropped suddenly to about one-half the level of the immediate prior weeks and stayed at that reduced level through December and early January 1999.
In late November of 1998 Salvatore Belaro, the primary business manager for JGVS visited the Farmington restaurant and observed the dough making equipment and empty flour sacks at the outside dumpster. These observations coupled with the reduced purchase of dough which had been taking place since November 1998 prompted Salvatore Balero to instruct his attorney to put Macek on notice that he was in violation of the Franchise agreement and to cease making his own bagel dough as well as to adhere to the business hours called for in the agreement. JGVS's counsel letter was dated January 21, 1999. By letter dated January 24, 1999 to Salvatore Balero, Macek for the first time since 1991 brought up the matter of Kosher bagels claiming that the franchise agreement required that JGVS supply Kosher bagel dough. The letter goes on to state that "So far, you have not supplied any. If you are unable to supply this product to me within thirty (30) days from the date of this letter, I intend to purchase bagels from another source, as provided in the agreement."
In mid-February 1999 the parties met. Those present were Macek, his wife, Giuseppe Balero, Sal Balero and counsel for the Baleros. At this meeting, the Baleros indicated that if Macek really wanted to sell Kosher bagels in his restaurant he would have to take the steps necessary to get the restaurant certified. JGVS would in turn take the steps necessary on its end to sell him Kosher bagel dough. JGVS indicated at this meeting they were willing to meet with Macek and a rabbinical representative chosen by Macek. Macek gave no indication he was willing to participate in such a meeting or to take any steps to follow up on JGVS's offer.
In May, 1999, Macek ceased purchasing any bagel dough from JGVS. Macek continues to operate under the name "Fancy Bagels". Although Macek's stated reason for ceasing to purchase JGVS's bagel dough is that it is not Kosher, all of the dough purchased by him since May 1999 has not been Kosher even though Kosher CT Page 1875 dough was available to him. Macek knew from his experience in 1991-1992 that to sell Kosher bagels he had to take certain steps in his own restaurant and since 1991-1992 he has not made any efforts to comply with the laws of Kashrut in his restaurant.
There are no royalties or regular franchise fees payable by the franchisee to the franchisor under this franchise arrangement. The only income from the franchisee to the franchisor is through the purchase of bagel dough. Even while Macek continues to operate as a Fancy Bagel franchisee under the Fancy Bagel name there is no exchange of money or products. Since there are only four franchises in this franchise system the loss of revenue from Macek has a negative effect on the financial condition of JGVS since fixed costs associated with the New Britain factory must be spread among three rather than four restaurants.
Since May, 1999 Salvatore Balero has purchased bagels from Macek's Farmington restaurant and has found the bagels to be of poor quality and not in accordance with franchisor-prescribed standards. JGVS informed Marcek that it would have no choice but to terminate his franchise if he continued to make his own bagels or to purchase dough from a source other than JGVS.
On July 9, 1999 Macek was given formal notice that the franchise agreement would terminate effective sixty-one days from the receipt of the notice of termination. Shortly after receipt of the notice of termination, Macek filed the instant action seeking a temporary injunction to enjoin termination of the franchise.
"It is fundamental that a temporary injunction should not issue while the right which the plaintiff seeks to have protected is in doubt, where the right to the relief is in doubt or except in a clear case of right. This is particularly true when the effect of the injunction is not merely to keep matters in status quo. 32 C.J. Injunction § 16." O'Connor vs. United Casualty Co.,3 Conn. Sup. 270, 272-273 (1940). An injunction in the instant case would not operate to keep matters in status quo. An injunction would result in ongoing harm to JGVS in the form of continuing hardship to JGVS flowing from the cessation of income from 25% of its franchise base and the continuing damage to its marks and franchise system flowing from Macek's continued sale of bagels, under the Fancy Bagel name, which bagels JGVS considers to be inferior and inconsistent with its standards. Macek will be out of business if his franchise is terminated. The injunction Macek CT Page 1876 seeks is one which would allow him to continue to operate under the Fancy Bagel name, marks and system without buying his raw dough from JGVS. Such an arrangement does not maintain the status quo. It maintains the situation Macek created when he chose to construe the contract as he did., i.e. that JGVS was under contract to provide him with Kosher bagels and if it did not he Macek could go elsewhere for his bagels both Kosher and non-Kosher.
This court cannot say that the hardships tip decidedly in Macek's favor. It is therefore Macek's burden to show that his rights are not in any doubt. From the facts found this court concludes that Macek has not so shown. In 1992 when the previous owners of JGVS stopped providing Kosher bagel dough Macek did not complain. He simply dropped holding his bagels out as Kosher. The new owners of JGVS were not approached by Macek about providing Kosher dough. Even when Salvatore Balero approached Macek about dropping the Kosher provision in the franchise agreement, Macek did not give as his reason for leaving it in that he wanted JGVS to provide Kosher dough. It was not until JGVS put Macek on notice to cease and desist from making their own bagel dough or from buying it elsewhere that Macek claimed JGVS had breached the contract by not providing him with Kosher bagel dough. When JGVS offered to work with Macek to get certification Macek took the position that JGVS had to get certification first before he made any modifications to his restaurant. Even after he stopped ordering from JGVS and had Kosher bagel dough available from another source, Macek made no effort to have his restaurant readied to be certified to sell Kosher bagels.
Since Macek would appear to have no serious intention of selling Kosher bagels and since he has been continuing to hold himself out as a Fancy Bagel Franchise, this court sees no reason why Macek should not, as a condition of his continuing to keep his business premises operational, be expected to resume purchasing JGVS bagel dough during the pendency of this action. During the pendency of this action Macek would be precluded from making his own bagel dough or ordering bagel dough, from a source, other than JGVS. During the pendency of this action JGVS and Macek can, if they wish, consider a joint effort as regards the manufacture and sale of Kosher bagels; but, as a condition of that, Macek would have to be the first one to take the necessary steps to modify his restaurant for purposes of getting certification. Accordingly the following temporary injunction may issue: CT Page 1877
JGVS is enjoined from terminating the franchise agreement on the condition that Macek resume purchasing no later than February 29, 2000 his bagel dough exclusively from JGVS and continues to do so during the pendency of this action. This temporary injunction will terminate on March 1, 2000 if Macek has not resumed purchasing his bagel dough exclusively from JGVS.
M. Hennessey, J.